UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| Donna Jones, | | |
| | Plaintiff, | |
| -v.- | | 1:06-CV-01427 (NPM) |
| UNUM Provident Insurance, and SmithKline Beecham Corporation, d/b/a GlaxoSmithKline, | | |
| | Defendants. | |

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| FOR PLAINTIFFS: | |
| Donna Jones, *pro se*  6 Flintock Lane  Clifton Park, NY 12065 | |
| FOR DEFENDANTS: | |
| Bond, Schoeneck & King, PLLC  111 Washington Avenue  Albany, NY 12210-2280 | Stuart F. Klein, Esq. |
| Schoeman, Updike & Kaufman, LLP  60 East 42nd Street  39th Floor  New York, NY 10165-0006 | Beth L. Kaufman, Esq. |

Neal P. McCurn, Senior District Judge

## *MEMORANDUM, DECISION AND ORDER*

### *I.     Introduction*

Plaintiff, Donna Jones ("Jones" or "plaintiff"), appearing *pro se*, brings this action against her former employer, SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK"), as well as UNUM Provident Insurance ("UNUM"), alleging violations of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, as well as a civil rights violation under 42 U.S.C. § 1983 ("section 1983"), and related state common law claims.  Presently before the court is a motion to dismiss by defendant GSK for failure to state claims upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  FED. R. CIV. P. 12(b)(6).  In the alternative, GSK seeks to strike certain portions of the complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.  FED. R. CIV. P. 12(f).  Plaintiff opposes.  Also before the court is a motion to amend the complaint by plaintiff pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.  FED. R. CIV. P. 15(a).  GSK opposes, but defendant UNUM does not.  The court decides these motions on the papers submitted without oral argument.

### *II.    Background*

For purposes of deciding the present motion, the court will, as it must, accept the allegations of fact in the complaint as true, drawing all reasonable inferences in plaintiff's favor.  <u>World Religious Relief, Inc. v. Sirius Satellite Radio, Inc.</u>, No. 05-CV-8257, 2007 WL 2261549, at *1 (S.D.N.Y. Aug. 7, 2007) (<u>quoting</u> <u>Hernandez v. Coughlin</u>, 18 F.3d 133, 136 (2d Cir.1994)).  Further, plaintiff incorporates into her complaint by reference certain documents which the court will consider when deciding the present motion.  <u>See</u> *infra*, at 5-6.

1

Plaintiff, a registered nurse, began her employment with GSK in early 1989. During her employment, plaintiff was covered by a Long Term Disability ("LTD") Plan ("the Plan"), which was provided through an insurance contract with Provident Life and Accident Company ("Provident"). See Ex. 12 to Aff. of Donna Jones, Feb. 22, 2007, Dkt. No. 18 ("Jones Aff."). According to the express terms of the Plan, it is "a contract between the Policyholder and Provident []." Id. at 2. Further, the Plan identifies GSK as Plan Sponsor and Plan Administrator, while Provident is the identified as the Fiduciary. See id. at 28. Plaintiff states her belief that "Unum Provident" determines eligibility for benefits under the Plan, after a review of the participant's claim. See Compl. ¶ 18-1.[1] The Plan expressly provides that "[a]ll benefit claim determinations made by Provident shall be final and conclusive, and are not subject to further appeal to GSK." Ex. 12 to Jones Aff., at 2. Nonetheless, plaintiff alleges that the "Vice President of U.S. benefits of GSK [] has the last say on the approval of LTD claims filed by GSK employee[]s, including the plaintiff's claim." Compl. ¶ 16-2.

Pursuant to the Plan, in order to be eligible for LTD benefits, a participant such as the plaintiff must be totally disabled, which means that for the first two years of LTD the participant "is unable to perform on a full-time or part-time basis each of the Important Duties of Your Job because of an Injury or Sickness that started while insured under the Policy; do[es] not work at all in any job; and [is] under a Physician's Care." Ex. 12 to Jones Aff. at 7, 12. After the first two years of LTD a participant continues to be totally disabled if he or she is "unable to

---

[1] Plaintiff's complaint includes two paragraphs each, numbered 16, 17 and 18. For simplicity's sake, the court will identify said paragraphs as ¶¶ 16-1, 16-2, 17-1, etc.

2

work at all in any job for which [he or she] is or may become suited by education, training or experience; and [is] under a Physician's care." Id.

In March 2003, due to emotional trauma caused by her work environment which manifested itself physically, plaintiff left work at GSK on short term disability. Plaintiff was being treated by Rudy Nydeggar, Ph.D., who diagnosed her with an adjustment disorder, anxiety, depression, insomnia "and an exacerbation of her medical condition." Compl. ¶ 33. Dr. Nydeggar refused to allow plaintiff to return to her work environment. Therefore, in further consideration of the fact that her short term benefits would terminate in September 2003, plaintiff applied for LTD on August 18, 2003. After frequent communication with "a consultant of Unum Providen[t]" during September and October 2003, plaintiff was eventually informed, on November 24, 2003, that her application for LTD was denied. Compl. ¶ 36. One month later, plaintiff appealed the denial of her application to "Unum, Provident Life and Accident Insurance Company." Compl. ¶ 37. On January 28, 2004, plaintiff was notified by letter that her claim for LTD had again been denied, and that she had exhausted the appeals process.

The following year, plaintiff received notice that her LTD claim would be reassessed due to a multi-state settlement with insurance regulators and the Department of Labor. Several times during the months of March, April and May 2006, the plaintiff was in contact with representatives of UNUM, and was informed that UNUM possessed all of the proper paperwork to conduct a reassessment of plaintiff's application for LTD. In June 2006, plaintiff spoke to a representative of UNUM, who spoke only of plaintiff's then pending employment

3

discrimination lawsuit against GSK.[2] Plaintiff received a telephone message from another UNUM representative in September 2006, after which plaintiff requested that all further communication from UNUM be in writing. On October 27, 2006, UNUM notified plaintiff by letter that her LTD claim under the reassessment was denied.

Plaintiff initiated the present lawsuit on November 28, 2006, through which she alleges that both defendants GSK and UNUM (1) denied LTD benefits due her under the Plan in violation of ERISA and in breach of the terms of the Plan; (2) intentionally denied her LTD claim in retaliation for her having filed an employment discrimination claim against GSK in violation of her rights under the First Amendment to the United States Constitution; and (3) intentionally inflicted emotional distress upon plaintiff by harassing her for information regarding her employment discrimination claims and intentionally denying her LTD claim in order to induce further stress and hardship. See Compl. ¶¶ 42-45. Plaintiff seeks "over $160,000 in claim benefits" as well as compensatory damages for, among other things, lost investment income and mental stress. See id. ¶¶ 46-48.

## III. Discussion

### A. Motion to Dismiss the Entire Complaint or Alternatively, to Strike Plaintiff's Claim for Extracontractual Damages

Defendant GSK argues that plaintiff's complaint should be dismissed for failure to state a claim because (1) plaintiff fails to allege that GSK had any role in the denial of her LTD claim; (2) any claim for breach of contract is preempted by ERISA; (3) plaintiff fails to allege the requisite extreme and outrageous conduct

---

[2] See Jones v. SmithKlineBeecham, 1:02-CV-01428 (N.D.N.Y., McAvoy, D.J.).

4

for an intentional infliction of emotional distress ("IIED") claim, and in any event, such a claim is preempted by ERISA and barred by the statute of limitations; and (4) plaintiff fails to allege the requisite state action for a section 1983 claim. In the alternative, defendant argues, the court should strike any claim for extra-contractual damages.

UNUM, for its part, takes no position on GSK's motion to dismiss, but concurs with GSK's request that all extra-contractual damages be stricken from the complaint. See Dkt. No. 16.

### *1.    Rule 12(b)(6) Motion to Dismiss*

At the outset, the court notes that it is mindful of the well-established principle that a *pro se* complaint is to be construed liberally, and interpreted to raise the strongest arguments it suggests. See Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007). Indeed, as limited as the requirements are for a complaint drafted by competent counsel, a *pro se* complaint is held to an even lower standard. See Platsky v. C.I.A., 953 F.2d 26, 28 (2d Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (*per curiam*)). The Second Circuit has further instructed that, when reviewing *pro se* submissions, a district court should look at them "with a lenient eye, allowing borderline cases to proceed." Phillips v. Girdich, 408 F.3d 124, 127-28 (2d Cir.2005) (quoting Fleming v. United States, 146 F.3d 88, 90 (2d Cir.1998) (per curia)).

As previously mentioned, when deciding a Rule 12(b)(6) motion to dismiss, the court must accept the allegations of fact in the complaint as true, drawing all reasonable inferences in plaintiffs' favor. See *supra*, at 1. In certain circumstances, the court may permissibly consider documents other than the

5

complaint in ruling on a Rule 12(b)(6) motion, such as those documents that are attached to the complaint or incorporated in it by reference. See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." Id. (quoting Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir.1991)(emphases added), cert. denied, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992)). Here, plaintiff expressly refers to "GSK's policy contract with Unum Provident[,]" Compl. ¶ 14, and a "2003 [] policy for LTD insurance" under which plaintiff was covered, Compl. ¶ 15. Plaintiff submitted a copy of said contract as an exhibit to her Affidavit in Opposition to GSK's motion to dismiss, see Dkt. No. 18, Ex. 12, which is identical to the document submitted by GSK, see Aff. of Beth Kaufman, Feb. 7, 2007, Ex. A, Dkt. No. 13 ("Kaufman Aff.").[3] As such, the court may consider the contents of this document, as well as the allegations in the complaint, when deciding GSK's motion to dismiss.

Finally, a motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1974 (2007).[4] The Court of Appeals for the Second Circuit has recently

---

[3] Notably, the contracts submitted by both plaintiff and GSK are dated "1/2002", not 2003 as stated by plaintiff in the complaint.

[4] By its opinion in Bell Atlantic, the Supreme Court recently abrogated the often-cited language of Conley v. Gibson "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 127 S.Ct. 1955, 1968 (2007) (quoting Conley, 355 U.S. 41, 45-46, 78 S.Ct.99 (1957)). In so doing, the Court found that Conley "described the breadth

6

interpreted the foregoing language as requiring that lower courts apply "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*[,]" but does not require a heightened pleading standard for civil rights claims.  Iqbal v. Hasty, 490.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).

### *a.     ERISA*

Plaintiff alleges that defendants GSK and UNUM intentionally and deliberately denied her claim for LTD in violation of her benefit plan agreement. See, e.g., Compl. ¶¶ 1, 42, and 45.  Such an allegation by a *pro se* plaintiff may be liberally interpreted to state ERISA claims for recovery of benefits due under an employee benefits plan, and for breach of fiduciary duty.  See 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3), respectively.  Here, GSK argues that the ERISA claims against them must be dismissed because plaintiff fails to allege any involvement on behalf of GSK in the denial of her LTD claim, and because GSK is not a fiduciary with respect to the administration or management of the plan. Plaintiff argues to the contrary that GSK was involved as the plan administrator, and made the final decision to deny her claim for LTD benefits.

Regarding plaintiff's first claim to recover LTD benefits under the plan, ERISA provides as follows:

> A civil action may be brought – (1) by a participant or beneficiary – ... (B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under

---

of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  Id., at 1969.

>the terms of the plan[.]

29 U.S.C. § 1132(a)(B) (2006).  An employer, such as GSK here, may not be held liable on a claim for recovery of benefits under ERISA unless it has been designated as a plan administrator or trustee.  See Crocco v. Xerox Corp., 137 F.3d 105, 107 (2d Cir. 1998); Fredericks v. Hartford Life Ins. Co., 488 F.Supp.2d 210, 212 (N.D.N.Y. 2007).  However, even where the express terms of a plan identify an employer as the plan administrator, courts have still not held the employer liable for recovery of benefits under the plan if it took no action with respect to the denial of benefits at issue.  See Mendes v. Jednak, 92 F.Supp.2d 58, 66 (D. Conn. 2000); MacMillan v. Provident Mutual Life Ins. Co. of Philadelphia, 32 F.Supp.2d 600, 604-05 (W.D.N.Y. 1999).

Here, the plan clearly states that GSK is the "Plan Administrator."  Ex. A to Kaufman Aff., at 28, Dkt. No. 13.  The terms of the plan also indicate that Provident, not GSK, decides and investigates claims by participants.  See id. at 4, 26-27.  In fact, plaintiff alleges in her complaint that "eligibility for plan benefits will be determined by Unum Provident (the insurer) after their review of the plaintiff's claim."  Compl. ¶ 18-1.  However, plaintiff further alleges that the "Vice President of U.S. benefits of GSK [] has the last say on the approval of LTD claims filed by GSK employee[]s, including the plaintiff's claim."  Id. ¶ 16-2.  To support this allegation, in her opposition papers plaintiff cites two separate actions defended by GSK, ostensibly to show that GSK was involved in the decision making process regarding claims for LTD benefits under the Plan.  Nonetheless, neither of these cases substantiates plaintiff's argument.  The first cited case, Borgus v. SmithKline Beecham Corp., No. 02-CV-6472, 2004 WL 2095534 (W.D.N.Y. Sept. 20, 2004), involved claims under the Americans with Disabilities

8

Act of 1990, 42 U.S.C. §§ 12101, *et seq*. ("ADA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII"), and the New York Human Rights Law, N.Y. Exec. L. §§ 296, *et seq*. ("HRL").  There being an issue regarding GSK's intrusion into plaintiff Borgus's medical treatment, plaintiff here misinterpreted same to establish that GSK was "involved in medical benefits" and therefore, involved in the decision to deny her claim for LTD benefits.  Jones Aff. at 8, Dkt. No. 18.  Unlike here, the plaintiff in Borgus did not claim an ERISA violation, see 2004 WL 2095534, at *1, nor did the court there discuss GSK's employee benefits plan when deciding the motion for summary judgment, see id. at *4-8.  Plaintiff argues the second cited case, Porter v. Smithkline Beecham Corp., 373 F.Supp.2d 1306 (M.D. Fla. 2005), supports her contention that GSK has discretionary authority to award LTD benefits under the Plan, and that the Vice President of U.S. benefits has the final decision-making authority regarding claims for LTD benefits under the Plan.  See Jones Aff. at 17.  While it is true that the court in Jones found the Plan provided that GSK had the "absolute right . . . to make determinations of fact and eligibility for benefits ...," the court there was reviewing the Plan summary and ERISA information dated December 1993 and May 1994, respectively.  See Jones, 373 F.Supp.2d at 1308.  No such language exists in the documents submitted to this court by both parties, which include a Plan summary and ERISA information dated January 2002.  See Ex. 12 to Jones Aff., Dkt. No. 18; Ex. A to Kaufman Aff., Dkt. No 13.  Plaintiff specifically acknowledges in her complaint and opposition papers that her claim for LTD benefits at issue here was submitted pursuant to the 2002 Plan.  Compl. ¶ 15; Ex.

9

12 to Jones Aff.[5]  As such, the findings of the Jones court are not relevant to the issues here.  Because the terms of the Plan at issue here clearly state that Provident, not GSK, retains the authority to determine eligibility for LTD benefits, and because the Plan is devoid of any language to indicate that GSK has any involvement in the decision making process regarding claims for LTD benefits, plaintiff cannot state a claim for recovery of benefits against GSK pursuant to 29 U.S.C. § 1132(a)(1)(B), and therefore, said claim is dismissed accordingly.

To the extent plaintiff alleges a breach of fiduciary duty against GSK, ERISA provides for such a cause of action as follows:

> A civil action may be brought (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title [providing liability for a breach of fiduciary duty]; (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief ... .

29 U.S.C. § 1132(a)(2)(3) (2006).  Section 409(a) of ERISA provides that

> [a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of the assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

---

[5] While in her complaint, plaintiff continually implies that the Plan was enacted in 2003, she nonetheless submits a copy of the Plan document, which is dated January 2002.  See Ex. 12 to Jones Aff.

10

29 U.S.C. §1109(a) (2006). Regarding the definition of "fiduciary" under ERISA, the statute explains that

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C.A. § 1002(21)(A) (2006). The Court of Appeals for the Second Circuit has interpreted section 1002(21)(A) to create a bifurcated test, which is that in the first instance, one who exercises discretionary authority is a fiduciary regardless of whether such authority was ever granted, and in the second instance, one who has been granted discretionary authority is a fiduciary, regardless of whether such authority is ever exercised. See Bouboulis v. Transport Workers Union of Am., 442 F.3d 55, 63 (2d Cir. 2006). Here, to be sure, as GSK points out, the Plan expressly identifies Provident as the "Claims Fiduciary" while GSK is identified as both the "Plan Sponsor" and "Plan Administrator." See Ex. 12 to Jones Aff. at 28. However, it is clear that an entity's title does not necessarily define its fiduciary status. For example, as the Supreme Court recently noted, "an employer's fiduciary duties under ERISA are implicated . . . when it acts in the . . . capacity [of plan administrator.]" Beck v. Pace Int'l Union, — U.S. —, 127 S.Ct. 2310, 2316 (2007). As such, the mere fact that GSK is named the plan administrator and not the fiduciary does not assist the court in determining

11

whether or not it was a fiduciary in its relationship to plaintiff regarding her claim for LTD benefits. The court must look further, applying the test set forth in Bouboulis. See Bouboulis, 442 F.3d at 63.

In Bouboulis, the Second Circuit held that the defendant plan administrator was a fiduciary where, unlike here, the plan at issue made clear that the defendant had discretionary authority or responsibility for the administration of the plan, even though it never actually exercised such authority. See id. at 64-65. For example, in Bouboulis, the plan there indicated that if the insurance company decided against a plan participant, said participant could appeal to the plan administrator. See id. at 64. Here, not only is there no reference to any discretionary authority given to GSK under the Plan, the Plan in fact specifically states that "[a]ll benefit claim determinations made by Provident shall be final and conclusive, and are not subject to further appeal to GSK." Ex. 12 to Jones Aff. at 2. Moreover, plaintiff here fails to allege that GSK did, in fact, exercise discretionary authority regarding the disposition of her claim for LTD benefits. It is true that plaintiff alleges a GSK employee assisted her in completing her claim for LTD benefits. Compl. ¶¶ 16-1, 34-35. However, mere assistance in applying for a benefit under the plan or even in handling a claim for such benefits does not give rise to fiduciary status. See Toussaint v. JJ Weiser & Co., No. 04-CV-2592, 2005 WL 356834, at *7 (S.D.N.Y. Feb. 13, 2005) (citing Fink v. Union Cent. Life Ins. Co., 94 F.3d 489, 493 (8th Cir. 1996); Kerns v. Benefit Trust Life Ins. Co., 992 F.2d 214, 217-18 (8th Cir. 1993)). In addition, plaintiff's allegation that the Vice President of U.S. benefits for GSK has the final authority on approval of claims for LTD benefits by GSK employees is conclusory in nature, and therefore not to be considered by the court in deciding GSK's Rule 12(b)(6) motion. See

12

Wrightman-Cervantes v. American Civil Liberties Union, No. 06-CV-4708, 2007 WL 1805483, at *1 (S.D.N.Y. June 25, 2007) (quoting Friedl v. City of New York, 210 F.3d 79, 85-86 (2d Cir. 2000) ("[T]o survive a Rule 12(b)(6) motion, a *pro se* plaintiff must support his claims with 'specific and detailed factual allegations, not stated in wholly conclusory terms.'")). In any event, a reading of the Plan governing plaintiff's application for LTD benefits does not substantiate plaintiff's allegation, which is clearly based on plaintiff's faulty reliance on factual findings set forth in Porter v. Smithkline Beecham Corp., 373 F.Supp.2d 1306 (M.D. Fla. 2005). See *supra*, at 9-10. Therefore, because GSK may not be deemed a fiduciary under the two part test set forth in Bouboulis, *supra* at 11, plaintiff's claim for breach of fiduciary duty against GSK is dismissed.

### b.     *State Common Law Claims for Breach of Contract and IIED*

GSK contends that plaintiff's state common law claims for breach of contract and IIED are pre-empted by ERISA, and therefore must be dismissed. GSK further argues that the IIED claim must be dismissed because plaintiff fails to allege a *prima facie* case, and because the claim is barred by the statute of limitations. Because the court finds that both claims are pre-empted by ERISA, it declines to address GSK's remaining arguments regarding the IIED claim.

Section 514(a) of ERISA, otherwise knows as the pre-emption clause, provides, in relevant part, that the statute "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ... ." 29 U.S.C. § 1144(a) (2006). See also Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44-45, 107 S.Ct. 1549, 1551 (1987). ERISA's pre-emption clause is "among the broadest that can be found in the law." Todd v. Aetna Health Plans, 62 F.Supp.2d

909, 915 (E.D.N.Y. 1999) (quoting Geller v. County Line Auto Sales, Inc., 86 F.3d 18, 22 (2d Cir. 1996)).  The Supreme Court has clarified that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."  Cicio v. Does, 385 F.3d 156, 158 (2d Cir. 2004) (quoting Aetna Health Inc. v. Davila, 542 U.S. 200, 209, 124 S.Ct. 2488, 2495 (2004)).  A state law cause of action "*relates to* a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan."  Pilot Life, 481 U.S. at 47, 107 S.Ct. at 1553 (internal quotation omitted) (emphasis added).  "Even state law claims that do not explicitly refer to employee benefit plans, but which merely arise from the administration of such plans, whether directly or indirectly, are pre[-]empted."  Billinger v. Bell Atlantic, 240 F.Supp.2d 274, 286 (S.D.N.Y. 2003).  As such, where, as here, a plaintiff set forth a claim for breach of contract arising from defendant's denial of her claim for LTD benefits under her employer's LTD plan, the court dismissed said claim as pre-empted by ERISA.  See id. at 277, 287.  Likewise, this court has previously found that claims for emotional distress based upon a denial of benefits under an employee benefit plan are also pre-empted by ERISA.  See Community Gen. Hosp., Inc. v. Zebrowski, No. 03-CV-249, 2004 WL 1769102, at *8 (N.D.N.Y. Aug. 2, 2004) (citing Todd, 62 F.Supp.2d at 915 ("[S]tate law claims of ... intentional infliction of emotional distress. ... are clearly pre[]empted by ERISA as a matter of law.").

To be sure, at least one court has declined to grant a Rule 12(b)(6) motion to dismiss an IIED claim on ERISA pre-emption grounds where the court found said claim was personal to plaintiff and was not related to her employee benefit plan

14

because she alleged harassment, vandalism and threats of physical harm resulting in plaintiff's need to hire a bodyguard. See Donohue v. Teamsters Local 282, 12 F.Supp.2d 273, 280-81 (E.D.N.Y. 1998). To be sure, plaintiff includes in her allegations a recitation of events which led to her emotional condition, for which she was claiming LTD benefits. Plaintiff claims she received several flat tires and that a recording, which sounded like a rifle being cocked, was left on her answering machine. Compl. ¶ 28. Both incidents are related to a series of workplace related events upon which plaintiff based previous actions filed in this court for employment discrimination, see Jones v. SmithKlineBeecham, 1:02-CV-01428 (N.D.N.Y., McAvoy, D.J.), as well as libel, IIED, negligent infliction of emotional distress ("NIED"), and violations of her civil rights pursuant to 42 U.S.C. § 1983, see Jones v. SmithKlineBeecham, 1:07-CV-00033 (N.D.N.Y., McCurn, S.D.J.), both of which have been dismissed with prejudice. Neither incidents are related to the present action, except insofar as they ostensibly explain the basis for plaintiff's LTD claim. As such, the facts supporting the holding in Donohue are not analogous to the facts of this case, and therefore, that court's holding is given little weight here. Here, as in Billinger and Zebrowski, plaintiff is claiming breach of contract and IIED regarding the denial of her claim for LTD benefits under the Plan. Because these claims clearly relate to, and arise from the administration of, the Plan, they are pre-empted by ERISA and are therefore dismissed.

It should also be noted that although UNUM failed to join in GSK's motion to dismiss plaintiff's state law claims, because it is clear that ERISA preempts plaintiff's breach of contract and IIED claims against both defendants, for reasons of judicial economy, the court *sua sponte* dismisses the state law claims against

15

UNUM as well as against the moving defendant, GSK.

### c. Section 1983 Claim

Finally, plaintiff alleges a section 1983 claim against GSK for the violation of her First Amendment rights. In order to state a claim pursuant to 42 U.S.C. § 1983 , a plaintiff must allege that (1) "some person has deprived him of a federal right," and (2) "the person who has deprived him of that right acted under color of state ... law." Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005), (quoting Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920 (1980)). Traditionally, the definition of acting under color of state law requires that the section 1983 defendant "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Kern v. City of Rochester, 93 F.3d 38, 43 (2d Cir. 1996) (quoting West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255 (1988) (internal quotation and citation omitted)).

Here, there is no indication in plaintiff's complaint that either defendant acted by virtue of state law. Regarding GSK's corporate status plaintiff merely alleges that it is a "foreign [c]orporation authorized to do business in the State of New York, with its principal place of business located [in] ... Pennsylvania ... ." Compl. ¶ 10. As to defendant UNUM, plaintiff alleges that it "is an American corporation authorized to do business in the State of New York, with its principal place of business located ... [in] Tennessee... ." Id. ¶ 11. A corporate entity will be deemed a state actor "only if (1) the government created the corporate entity by special law, (2) the government created the entity to further governmental objectives, and (3) the government retains permanent authority to appoint a majority the directors of the corporation[.]" Horvath v. Westport Library Ass'n, 362 F.3d 147, 153 (2d Cir. 2004) (quoting Hack v. President & Fellows of Yale

Coll., 237 F.3d 81, 84 (2d Cir.2000) (internal citation and quotation omitted)). Here, plaintiff fails to allege any government involvement whatsoever in either GSK's or UNUM's creation or oversight. Therefore, as private corporations that were acting as such when the underlying events giving rise to this lawsuit occurred, as a matter of law, neither GSK nor UNUM is a state actor for purposes of evaluating plaintiff's civil rights claim here. Accordingly, plaintiff's section 1983 claim is dismissed as against the moving defendant, GSK, and, for purposes of judicial economy, said claim is *sua sponte* dismissed as against defendant UNUM.

### 2. Rule 12(f) Motion to Strike

GSK moves to strike plaintiff's remedy of extra-contractual damages as an alternative to its motion to dismiss all claims against it pursuant to Rule 12(b)(6). Because the court grants GSK's motion to dismiss all claims against it in full, its Rule 12(f) motion to strike is moot.

While defendant UNUM, by attorney affirmation, has concurred with GSK that "all of plaintiff's extra-contractual causes of action and any extra-contractual claim for damages should be dismissed in their entirety[,]" Aff. of Stuart F. Klein, Feb. 26, 2006, at ¶ 5, Dkt. No. 16, it nonetheless failed to properly move this court for such relief. See N.D.N.Y. R. 7.1(a). In fact, because UNUM did not properly file a motion to strike, the court denied plaintiff's request to reply to UNUM's attorney affirmation. See Dkt. Nos. 22,25. Accordingly, the court declines at this time to address the issue of extra-contractual damages as against defendant, UNUM.

### B. Motion to Amend the Complaint

Plaintiff seeks to amend her complaint in order to add Provident Life and

17

Accident Company and "SmithKline Beecham, U.S. Benefits, LTD Plan" as defendants. Rule 15 of the Federal Rules of Civil Procedure commands that leave of court to amend a pleading "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). "A motion to amend should be denied only for such reasons as 'undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.'" Richardson Greenshields Sec., Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (quoting State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir.1981)).

GSK opposes plaintiff's motion, arguing that (1) there is no such entity as "SmithKline Beecham, U.S. Benefits, LTD Plan," and (2) even if such an entity exists, plaintiff's claims are without merit for the same reasons set forth in its motion to dismiss. Because the court concludes that plaintiff cannot state claims against GSK upon which relief may be granted, therein finding that even assuming such an entity as "SmithKline Beecham, U.S. Benefits, LTD Plan" exists, plaintiff lacks any legal basis for her claims as against that entity, an amendment of plaintiff's complaint to add "SmithKline Beecham, U.S. Benefits, LTD Plan" as a defendant would be futile and therefore, plaintiff's motion in that regard is denied.

UNUM, on the other hand, does not oppose plaintiff's motion to amend. In fact, in its answer, UNUM claims as an affirmative defense that "UnumProvident Corporation is not a proper party defendant. Provident Life and Accident Insurance Company, a corporation that has not been properly named as a party to this action, issued the policy in suit and is the only party, if anyone, who is obligated thereunder." Ans. ¶ 49. Accordingly, plaintiff's motion to amend her complaint to add Provident Life and Accident Company as a defendant is granted.

## IV.   Conclusion

For the reasons set forth above it is hereby ORDERED that defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline's motion to dismiss all claims against it pursuant to Fed. R. Civ. P. 12(b)(6) is hereby GRANTED; and it is further

ORDERED that defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline's motion in the alternative to strike claims and remedies sought against it pursuant to Fed. R. Civ. P. 12(f) is MOOT; and it is further

ORDERED that plaintiff's claims of breach of contract and intentional infliction of emotional distress pursuant to New York common law, as well as her civil rights claim pursuant to 42 U.S.C. § 1983, are *sua sponte* DISMISSED as against defendant UNUM Provident Insurance; and it is further

ORDERED that plaintiff's motion to amend her complaint to add an entity identified as "SmithKline Beecham, U.S. Benefits, LTD Plan" is DENIED; and it is further

ORDERED that plaintiff's motion to amend her complaint to add Provident Life and Accident Company as a defendant is GRANTED.

IT IS SO ORDERED.

DATED:   September 5, 2007
         Syracuse, New York

_____
Neal P. McCurn
Senior U.S. District Judge

19